# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

WILLIAM FULKERSON,

     Plaintiff,

v.

CAROLYN COLVIN, Acting
Commissioner of the SOCIAL
SECURITY ADMINISTRATION,

     Defendant.

No. 16-CV-889-BRB-KBM

## ORDER GRANTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

**BALDOCK**, Circuit Judge.[*]

     Plaintiff William Fulkerson complains that his former employer, Defendant Social Security Administration (SSA), engaged in employment discrimination on the basis of disability, in violation of the Americans with Disabilities Act of 1990 (ADA), and retaliation, in violation of Title VII of the Civil Rights Act of 1964. Before the Court is Defendant's motion for summary judgment on both claims. Doc. 52. Upon motion, a district court should enter summary judgment if the evidence "shows that there is no genuine dispute as to any material fact and the

---

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when a reasonable jury could find in favor of the nonmovant. *Id*. To make this showing, the nonmovant must produce more than "a scintilla of evidence in support of [his] position." *Id*. at 252.

Defendant, as the moving party, has the initial burden to show "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once Defendant meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Id*. In so doing, the nonmoving party may not rest solely on the allegations in its pleadings, but must instead, by its "own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). The factual record and reasonable inferences are viewed in the light most favorable to the party opposing summary judgment. *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017). At the summary judgment stage, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby, Inc.*, 477 U.S. at 249.

I.

This lawsuit arises from Plaintiff's employment as a Staff Assistant in the SSA Mega Teleservice Center (TSC) located in Albuquerque, New Mexico. Plaintiff

began working for Defendant in 1989 and retired from the agency in February 2013. During that time, Plaintiff filed multiple Equal Employment Opportunity (EEO) complaints for disability discrimination and retaliation. In 2004, Plaintiff was diagnosed with Hepatitis C and depression. That same year, Plaintiff filed an EEO complaint for disability discrimination, naming Terry Clements (TSC Director) as the alleged discriminating official. Upon returning to work after eleven months of chemotherapy for Hepatitis C, Clements reassigned Plaintiff within the TSC from Section Manager to Staff Assistant. In 2005, Plaintiff filed an EEO complaint for retaliation, naming Clements as the alleged discriminating official. Notably, Plaintiff did not administratively exhaust his 2004 and 2005 EEO claims.

Plaintiff's disability discrimination and retaliation claims currently before this Court stem from a second round of EEO claims Plaintiff filed on January 5, 2012 and April 18, 2012.[2] The second round of EEO claims were based on two disabilities: diverticulitis and posttraumatic stress disorder (PTSD). In these new EEO complaints, Plaintiff alleged Defendant discriminated against him and subjected him to a hostile work environment in retaliation for his prior EEO activity.

---

[2] Doc. 58-1 at 1. In his complaint, Plaintiff claims he "filed his EEO claims beginning in September of 2011 and continuing until he left his employment." Doc. 1 at 3. Plaintiff did not point to any evidence to substantiate his claim. In fact, the evidence shows Plaintiff did not file an EEO claim until January 5, 2012. Doc. 58-1 at 1. Although the Court looks at the facts in the light most favorable to the Plaintiff, allegations made in pleadings that are contradicted by the evidence before the Court will not be considered. Plaintiff must provide evidence to substantiate his claims. *See Celotex*, 477 U.S. at 324.

To establish his disability discrimination and retaliation claims, Plaintiff asserts a series of alleged adverse actions. In 2008, Defendant assigned Plaintiff a new supervisor, Kathryn Rhoads. Plaintiff claims Rhoads knew about his 2004 and 2005 EEO complaints and his medical conditions, and as a result, Rhoads created a hostile work environment that caused Plaintiff to suffer from PTSD. Plaintiff alleges Rhoads made critical comments during several performance evaluations that Plaintiff interpreted to be retaliatory. For example, in November 2009, despite working at the TSC for two decades, Plaintiff claims he felt threatened during his year-end evaluation when Rhoads allegedly said, "You know I am the only one here who knows you." Doc. 55-2 at 3. During Plaintiff's mid-year evaluation in April 2010, Plaintiff met with Rhoads to discuss Plaintiff's work performance. Plaintiff alleges Rhoads made critical comments during his review including, "You are really, really slow," and "You have a bad reputation." Doc. 1 at 3. Despite Rhoads' alleged critical comments, Plaintiff also acknowledged that Rhoads worked to promote his skills. For instance, in June 2010, Rhoads requested and received approval from management to give Plaintiff an assignment to attend management meetings in an effort to help develop his skills. By the time Rhoads completed Plaintiff's 2010 year-end performance review, Rhoads ranked Plaintiff "5" out of "5" for Interpersonal Skills, noted Plaintiff's improvement, and encouraged Plaintiff to continue to find opportunities to maintain good working relationships with his colleagues.

On June 22, 2011, Plaintiff claims Rhoads told Plaintiff he was not a "team player" because "he questioned why the regional work cadre did not attend job related training." Doc. 55 at 7. Two days later, Plaintiff met with the TSC Director, Mikel Rowley, and TSC Deputy Director, Cynthia Steinberg, to inform them about Rhoads' "team player" comment and to request a new supervisor. He also sought to use the meeting as a vehicle to obtain a promotion, submitting a job application to Rowley at the meeting. Doc 55-1 at 21. According to Plaintiff, after their meeting, Rowley and Steinberg did not help advance Plaintiff's career and downplayed Rhoads' actions. According to Rowley, he followed up on Plaintiff's complaints by talking to Rhoads and discussing ways to improve communication. Rowley did not take further action because "[he] did not see these concerns as being severe enough to change [Plaintiff's] supervisor" and he "didn't see any retaliation." Doc. 55-2 at 22; Doc. 55-1 at 23. Additionally, Rowley did not award Plaintiff the job he applied for because Rowley did not think he would be successful in the position due to his history of yelling at his colleagues, including Rowley, Rhoads, and Kloeppel. Doc. 55-1 at 23 (yelling at Kloeppel); Doc. 55-1 at 25 (yelling at Rowley); Doc. 55-2 at 14, 22 (yelling at Rhoads).

In early August 2011, Plaintiff spoke with Rhoads on the phone. During their conversation, Rhoads allegedly "berated" Plaintiff about his plans for an upcoming training session. Doc. 55 at 27. Unbeknownst to Rhoads, her voice was audible to another SSA employee who was with Plaintiff during the phone call. Plaintiff claims

he felt embarrassed to be disciplined by his boss in front of the other SSA employee. A few days later, Plaintiff sent an email to Rowley to explain his issues with Rhoads and to request a new supervisor, again. Shortly thereafter, Rhoads told Plaintiff he would have to leave the Claims Section if he wanted a new supervisor. Plaintiff interpreted Rhoads' statement as a threat, even though it was factually true because Rhoads was the supervisor of the Claims Section at that time. On August 9, Rhoads sent Plaintiff an email stating she had communication and trust issues with him. On September 23, 2011, Rowley, Steinberg, and Rhoads met with Plaintiff again to discuss his issues with Rhoads. During the meeting, management denied Plaintiff's claims of alleged misconduct. Following the meeting, Plaintiff was dissatisfied with management's response and felt they failed to take any appropriate action to resolve the issue.

In October 2011, Defendant made several changes related to Plaintiff's employment that Plaintiff finds objectionable. For example, starting that month, Defendant changed its Officer-In-Charge (OIC) policy. Because of the policy change, Plaintiff was no longer eligible to serve as OIC. On October 19, 2011, Rhoads gave Plaintiff a "3" out of "5" for "Interpersonal Skills" as part of Plaintiff's employment performance rating. And upon completion of Plaintiff's temporary management development assignment on October 28, Defendant informed Plaintiff that he no longer needed to attend management meetings as part of his assignment.

In an effort to respond to Plaintiff's request for a new supervisor, Defendant

assigned Sue Kloeppel as Plaintiff's new supervisor in the Claims Section in October 2011, but Plaintiff's complaints about his supervisors continued. On November 23, Kloeppel issued an oral warning to Plaintiff for allegedly yelling at her. According to Plaintiff, this was the first time he was disciplined at work. On February 7, 2012, Kloeppel sent Plaintiff an email about Plaintiff's interference with personnel issues. According to Plaintiff, Kloeppel intended to use the email to harass, threaten, and retaliate against him. And on March 12, 2012, Plaintiff alleges Rowley told Plaintiff his job duties would be determined by Plaintiff's upcoming mediation regarding his second-round EEO claims.

Notably, Plaintiff's EEO complaints at issue and all of the alleged instances of discrimination and retaliation mentioned pre-date Plaintiff's diagnosis with diverticulitis and PTSD. Defendant was diagnosed with diverticulitis in May 2012 and diagnosed with PTSD in January 2013.[3] In November 2012, Plaintiff was "determined to be totally disabled." Doc.1 at 4. His last official day at the TSC was on February 8, 2013. Plaintiff subsequently retired when his application for disability was approved.

---

[3] The record does not support Plaintiff's assertion that he was diagnosed with PTSD in January 2012 by Dr. Thomas Gross who "believed Plaintiff was suffering from PTSD as a result of Plaintiff's hostile work environment." Doc. 55 at 3. Dr. Gross did not diagnose Plaintiff with PTSD and did not comment on what he thought about Plaintiff's work environment. Rather, Dr. Gross advised Plaintiff to see a psychiatrist or psychologist. Doc 52-8. Plaintiff's misrepresentation of the record has not gone unnoticed.

## II.

In his complaint, Plaintiff alleges "Defendant discriminated against Plaintiff in the terms and conditions of his employment on the basis of his disabilities" in violation of the Americans with Disabilities Act of 1990 (ADA). Doc. 1 at 4. The ADA prohibits employers from discriminating in employment on the basis of a disability. 42 U.S.C. § 12112(a). The United States, however, is specifically excluded from the statutory definition of "employer" within the ADA. 42 U.S.C. § 12111(5)(B)(i) ("The term 'employer' does not include the United States."). SSA is an independent agency of the United States federal government. Neither party disputes that SSA is a federal agency or that Plaintiff was a federal employee. Accordingly, Plaintiff cannot maintain a claim against Defendant under the ADA. *See Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998) ("As a federal employee, Rivera has no remedy for employment discrimination under the ADA. . . . His sole claim for discrimination on the basis of disability is under the Rehabilitation Act."); *Bolden v. Ashcroft*, 515 F. Supp. 2d 127, 137 (D.D.C. 2007) (dismissing an ADA claim against the U.S. Marshall Service because "[t]he ADA explicitly exempts the federal government from coverage.").

The Rehabilitation Act of 1973, instead, is the appropriate statute to bring Plaintiff's disability discrimination claim because it is the exclusive remedy for federal employees alleging disability discrimination against the United States or its agencies. 29 U.S.C. § 791; *Johnson v. United States Postal Serv.*, 861 F.2d 1475,

1477 (10th Cir. 1988). In his complaint, Plaintiff did not allege disability discrimination on the basis of the Rehabilitation Act.[4] In his response to Defendant's motion for summary judgment, Plaintiff omitted his ADA claim and changed his argument to rely on the Rehabilitation Act. "[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P 15(a)(2). Given Plaintiff did not amend his complaint, this Court dismisses Plaintiff's claims against Defendant regarding disability discrimination under the ADA.[5]

## III.

Plaintiff also claims Defendant retaliated against Plaintiff in the terms and conditions of his employment, in violation of Title VII. 42 U.S.C. § 2000e. Specifically, Plaintiff claims he was "retaliated against for engaging in protected activities by subjecting Plaintiff to a hostile work environment." Doc. 55 at 25.

---

[4] Inexplicably, Plaintiff brought this claim under the ADA even though Defendant previously provided the appropriate authority governing his claims. In its Notice of Consolidation of Plaintiff's two EEO claims, Defendant informed Plaintiff: "The authority to collect information relative to the investigation of this complaint derives from one or more of the following sources: Title VII . . . ; the Rehabilitation Act of 1973." Doc. 52-4 at 3. The Notice did not list the ADA as an appropriate authority for Plaintiff's claim.

[5] Plaintiff also raises two claims for the first time in his response to Defendant's motion for summary judgment: (1) Defendant regarded Plaintiff as disabled and (2) Plaintiff was subjected to a hostile work environment when Defendant failed to reasonably accommodate him by allowing him to use donated leave time to recover. This Court declines to construe Plaintiff's response as a request to amend his complaint. Accordingly, the Court will not consider Plaintiff's "regarded as" and "failure to accommodate" claims.

A.

The antiretaliation provision of Title VII forbids "discriminat[ion] against" an employee or job applicant who, *inter alia*, has "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e–3(a). To allege a prima facie case of retaliation, Plaintiff must allege "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). If Plaintiff has alleged a prima facie case of retaliation, the burden shifts to Defendant to show that the action was taken for a legitimate, non-discriminatory reason. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). This burden is one of production, not persuasion. *Carter v. Pathfinder Energy Services, Inc.,* 662 F.3d 1134, 1149 (10th Cir. 2011) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). "The relevant inquiry is not whether [Defendant's] proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Lobato v. New Mexico Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (citation and internal brackets omitted).

If Defendant satisfies its burden of producing evidence that the action was taken for legitimate, non-discriminatory reason, Plaintiff has the burden of establishing that Defendant's proffered explanation is pretextual. *Hansen v. SkyWest*

*Airlines*, 844 F.3d 914, 925 (10th Cir. 2016). Plaintiff may establish pretext by pointing out "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [Defendant] did not act for the asserted non-discriminatory reasons." *Lobato*, 733 F.3d at 1289. The Tenth Circuit has opined that an employee generally may establish pretext in one of three ways. An employee may present evidence that (1) the employer's stated reasons for an adverse employment action are false; (2) the employer acted contrary to a written company policy prescribing the employer's action against the employee under the circumstances; or (3) he was treated differently from other similarly situated employees who violated protocols of comparable seriousness. *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004).

B.

With the legal framework in place, the Court now turns to whether Plaintiff presented sufficient evidence on his retaliation claim. As for the first element of Plaintiff's prima facie case, the Tenth Circuit has noted, "[p]rotected opposition can range from filing formal charges to voicing informal complaints to superiors." *Fye v. Oklahoma Corp. Com'n*, 516 F.3d 1217, 1228 (10th Cir. 2008). In addition to voicing informal complaints, Plaintiff has established he engaged in the following protected employee actions: filing EEO claims in 2004, in 2005, on January 5, 2012,

and on April 18, 2012.

He then alleges that, in response to these protected employee actions, Defendant engaged in the following ten adverse actions against him. This Court will consider each instance in turn. For the first and second adverse actions, the Court analyzes Plaintiff's case under the first step of the *McDonnell Douglas* test—whether Plaintiff established a prima facie case of retaliation. For the remaining eight adverse actions, the Court proceeds to the second and third steps of the *McDonnell Douglas* test—whether Defendant provided a legitimate, non-retaliatory explanation for its action and whether Plaintiff refuted Defendant's explanations by showing they were pretextual.

**Adverse Action 1**. Plaintiff alleges Rhoads and Plaintiff's management team began subjecting Plaintiff to a hostile work environment in retaliation for Plaintiff's 2004 and 2005 EEO complaints. Plaintiff alleges Rhoads knew about Plaintiff's prior EEO activity. As evidence of an alleged hostile work environment, Plaintiff alleges: (1) Rhoads told Plaintiff, "You are slow! I mean you are slow–really slow," during Plaintiff's 2010 mid-year performance review; (2) Rhoads threatened to tarnish Plaintiff's reputation in June 2011 by telling everyone that Plaintiff is not a "team player"; (3) Rhoads denied Plaintiff higher grade duties to promote his career growth; (4) Rhoads told Plaintiff he should be happy in his current position; and (5) Plaintiff's management did nothing in September 2011 when Plaintiff complained of Rhoads' alleged actions. Doc. 55 at 26–27.

Plaintiff failed to establish the necessary elements of his prima facie case as to the first adverse action because he did not establish the desire to retaliate for the 2004 and 2005 EEO claims was the "but for" cause of Rhoads' alleged words and actions. To satisfy the causation element, a plaintiff must prove the desire to retaliate was the "but for" cause of the challenged employment action. *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). A causal connection may be shown by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). Here, however, a five to six year time lag between Plaintiff's participation in protected activity and Rhoads' comments by itself would not be sufficient to justify an inference of causation. *Compare Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (a three-month period, standing alone, is insufficient to establish causation) *with Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 386 (10th Cir. 1984) (a two-hour gap between protected conduct and adverse employment action was sufficient to satisfy the causation prong of the prima facie case).

Without temporal proximity to support an inference of causation, Plaintiff must offer additional evidence to establish causation. *Antonio*, 458 F.3d at 1181 ("[U]nless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."). To that end, Plaintiff does not provide evidence to establish causation.

The statement that is closest to asserting a causal connection is, "Ms. Rhoads admits she was aware that Plaintiff filed a prior EEO." Doc. 55 at 26. This however, does not establish evidentiary support that Rhoads acted in retaliation for Plaintiff's prior EEO activity. Given Rhoads was not involved with the prior EEO activity—in fact, she did not begin working as Plaintiff's supervisor until several years after the 2004 and 2005 complaints—nothing in the record indicates she had any motive to retaliate for actions in which she was wholly uninvolved. Under these circumstances, mere knowledge of prior EEO activity is insufficient to show causation because it does not justify an inference of retaliatory motive. *Meznick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991) ("[K]nowledge on an employer's part, without more, cannot itself be sufficient to take a retaliation case to the jury."). Without establishing a causal connection, Plaintiff cannot prove his prima facie case for retaliation as to the first adverse action.

**Adverse Action 2.** Plaintiff contends he was "ostracized and isolated by Defendant from his management team." Doc. 1 at 3. Plaintiff then expanded his claim in his response to Defendant's motion to suggest his supervisors' failure to reply to his email "at an appropriate time" interfered with his ability to perform his job. Doc. 55 at 9, 33. Plaintiff asserted he emailed "Mr. Rowley on August 9, 2011, August 19, 2011, and September 15, 2011, regarding continuing issues with Ms.

Rhoads, but did not get a response until September 20, 2011."[6]  Doc. 55 at 9.

Plaintiff's allegation does not constitute actionable retaliation.  Title VII does not

protect individuals from all retaliation; instead, the alleged retaliation must produce

an injury or harm.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68

(2006).  "Snubbing by supervisors and co-workers are not actionable under

§ 704(a)."  *Id.*  (internal citation and quotation omitted).  Accordingly, Plaintiff's

claim of a second adverse action does not withstand summary judgment.

For the remaining eight adverse action claims, there are several ways in which

Plaintiff failed to meet his burden to withstand summary judgment.  The Court,

therefore, proceeds to the second and third steps of the *McDonnell Douglas* test to

dispose of those claims.

**Adverse Action 3**.  Plaintiff alleges he received negative evaluations and was

evaluated on areas outside his job description in October 2011 in retaliation for

reporting Rhoads.  He argued the negative evaluations hurt his chances to advance

his career because he earned a "3" for "Interpersonal Skills" in 2011, which was

lower than the "5" he earned in 2010.  Defendant satisfied its burden under the

second step of the *McDonnell Douglas* test by providing a legitimate, non-retaliatory

explanation for the evaluation.  According to Defendant, Plaintiff's performance

---

[6] Plaintiff's own allegations to the EEOC contradict this assertion.  According to Plaintiff's Amended Issues Before the EEOC, Rowley responded to Plaintiff on August 15, 2011. Doc. 52-6 at 2. Plaintiff does not provide evidence the delay inhibited him from completing his job duties.

15

evaluation decreased because issues emerged from 2010 to 2011. "Ms. Rhoads state[d] that she felt that Plaintiff's interpersonal skills had slipped, that he was no longer functioning at the same level. Plaintiff had created conflicts with co-workers based on accusations and things that he had said." Doc. 52 at 25. As a result, Ms. Rhoads gave him a lower evaluation rating in 2011. Rhoads' explanation is supported by her contemporaneous evaluation of Plaintiff, in which she alluded to Plaintiff's conflicts with his coworkers, "I encourage you to continue to seek assistance when you are faced with difficult communications challenges." Doc. 52-11 at 6.

Proceeding to the third step of the *McDonnell Douglas* test, the Court concludes Plaintiff fails to satisfy his burden to demonstrate Defendant's non-retaliatory explanation was pretextual. To show pretext, Plaintiff must produce evidence of such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Lobato*, 733 F.3d at 1289. Plaintiff claims the 2011 evaluation occurred after Plaintiff reported Rhoads for creating a hostile work environment. The timing of the evaluation is relevant to the causation element of Plaintiff's prima facie case, but it does not satisfy Plaintiff's burden to demonstrate that Rhoads' explanation is unworthy of belief and does not demonstrate that Rhoads did not act for the asserted

non-discriminatory reasons. *Id*. Plaintiff also argues Rhoads acted on an alleged threat "to frame [Plaintiff] as a non-team player." Doc. 55 at 32. Rhoads' alleged "team player" comment, however, occurred several months earlier on June 22, 2011, and was not a blanket threat, as Plaintiff's suggests. Instead, Rhoads allegedly told Plaintiff he was not a "team player" because "he questioned why the regional work cadre did not attend job related training." Doc. 55 at 7. Absent evidence to suggest Rhoads did not honestly believe Plaintiff's interpersonal skills slipped and acted upon those good faith beliefs, Plaintiff's pretext argument fails.

**Adverse Action 4**. Plaintiff argues Rhoads threatened to reassign Plaintiff from the Claims Section if he got a new supervisor. Plaintiff claims this threat was in retaliation for Plaintiff reporting Rhoads. Proceeding to the second step of the *McDonnell Douglas* test, Defendant provided a legitimate, non-retaliatory explanation for the comments. Rhoads admits she discussed the issue with Plaintiff, but denied that it was intended as a threat or motivated by retaliatory animus. Instead, she explained the comments were an expression of her thoughts on the logistics of Plaintiff's request. Given Rhoads was the supervisor of the Claims Section, it follows that if Plaintiff were assigned a new supervisor, he would no longer be in the Claims Section.

To meet his burden under the third step of *McDonnell Douglas*, Plaintiff argues Defendant's explanation was pretextual, citing Rhoads' alleged comments that she was going to make Plaintiff look like he was not a "team player." As in Adverse

Action 3, Plaintiff does not explain how Rhoads' alleged "team player" comment is related to her alleged reassignment comment. According to the record, the "team player" comment occurred during a discussion about training, not about reassignment. Doc. 55-2 at 3. The Court finds nothing in the record to explain how being a "team player" would have any bearing on one's assigned supervisor. Further, the comment certainly does not present evidence of any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Lobato*, 733 F.3d at 1289. In the absence of evidence that casts doubt on Defendant's proffered explanation, Plaintiff has not met his burden of showing that Defendant's reason was a pretext for retaliation.

**Adverse Action 5.** Next, Plaintiff contends Rhoads retaliated against Plaintiff for his prior EEO activity when she "berated" Plaintiff on the phone on August 2, 2011 in front of another SSA employee. To explain Rhoads' legitimate, non-retaliatory motive for the interaction, Defendant recounted the context and substance of the phone call. According to Rhoads, she called Plaintiff to discuss an up-coming training that Plaintiff would be coordinating. Since Plaintiff seemed uncomfortable with the subject of the training (a computer program), Rhoads felt it was necessary to ask Plaintiff to develop a plan for the training. Plaintiff responded to Rhoads'

training plan request by asking, "Why don't you believe I can do this?" and "don't you trust me." Doc. 52 at 28. The two exchanged heated words, which were overheard by SSA employee, Patricia Brown, while she was sitting in Plaintiff's office.

In response to Defendant's explanation, Plaintiff proffers two theories to establish the explanation was pretextual. First, Plaintiff identified inconsistencies between the testimony of Rhoads and the testimony of Ms. Brown, the SSA employee in Plaintiff's office who overheard the conversation with Rhoads. Plaintiff disputes Defendant's statement that Plaintiff "became angry" and instead proffers Ms. Brown's testimony that, "When her [sic] got off, he was frustrated." Doc. 55 at 28. Plaintiff fails to articulate how being angry or being frustrated are sufficiently inconsistent to demonstrate pretext. Plaintiff's assertion that Plaintiff was "frustrated" but not "angry" is a distinction without a difference. A reasonable factfinder could not rationally find such a distinction was so inconsistent to infer Rhoads' explanation unworthy of credence. *Lobato*, 733 F.3d at 1289. Further, a reasonable factfinder could not find that such a distinction would create any inference that Rhoads did not act for the asserted non-discriminatory reasons. *Id*.

Second, Plaintiff argues Defendant's explanation is inconsistent because prior to the phone call, "Rhoads had never previously requested a training plan from Plaintiff." Doc. 55 at 27. Defendant explained Rhoads asked for the training plan because Plaintiff "previously told [Rhoads] that he did not understand a computer

program that was relevant to this third round of training." Doc. 52 at 28. Although Rhoads' request was inconsistent, the inconsistency does not cast doubt on Defendant's proffered explanation. Because Plaintiff's loose allegations do not explain the pretextual connection between Rhoads' request and any retaliatory animus, we do not consider this issue further. "[M]ere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011). Plaintiff's claim regarding the phone call, therefore, cannot withstand summary judgment.

**Adverse Action 6.** Plaintiff also claims he "was denied training to advance his career." Doc. 1 at 3. In an effort to provide an explanation for Plaintiff's vague claim, Defendant provided a justification for Cynthia Steinberg's decision to deny Plaintiff's request to bring in SSA employees to help Plaintiff train other employees.[7] According to Steinberg, she did not think it was a good use of SSA resources to bring in other employees for the training. Steinberg stated she "did not base [her] decision to deny [Plaintiff] the use of [SSA employees] on his alleged disabilities or his prior EEO activity." Doc. 52-12 at 4. While this explanation is not very illuminating, it is a legitimate, non-retaliatory explanation for Steinberg's decision.

In an effort to show Defendant's explanation was pretextual, Plaintiff's

---

[7] Neither party's pleadings provided a clear explanation of the issue involved with this claim. One thing, however, is clear: Plaintiff failed to produce more than "a scintilla of evidence in support of [his] position." *Liberty Lobby*, 477 U.S. at 252.

response is even more dim. Citing no evidence, Plaintiff claims he "included Ms. Steinberg in an email one month prior alleging that he was being subjected to a hostile work environment." Doc. 55 at 17. Plaintiff may not rest solely on the allegations in his pleadings, but must instead, by his "own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). This Court finds no evidence to suggest Defendant's explanation is pretextual because Plaintiff did not—as he must—produce evidence of any weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Defendant's explanation. *Lobato*, 733 F.3d at 1289. Even if Plaintiff provided evidence of the alleged email, the mere fact that Steinberg was aware of an alleged hostile work environment does not create a reasonable inference that Steinberg did not act for the asserted non-discriminatory reasons. *Id.* Accordingly, Plaintiff's claim regarding training cannot withstand summary judgment.

**Adverse Action 7**. Plaintiff claims on October 28, 2011, Defendant denied him permission to attend management meetings that he previously attended, which prevented Plaintiff from completing his job duties and from moving into a management role. As in Claims 3, 4, 5, and 6, the Court advances its analysis to step two of the *McDonnell Douglas* test. In response to Plaintiff's management meeting claim, Defendant explained Plaintiff no longer needed to attend management meetings because his attendance was part of a temporary developmental assignment,

which ended in October 2011.

Plaintiff contends Defendant's explanation was pretext for retaliation, arguing exclusion from management meetings was part of a broader effort by management to prevent Plaintiff's career growth. As purported evidence of pretext, Plaintiff lists several allegations, none of which call into question Defendant's explanation that Plaintiff's attendance was temporary and ended as planned at the end of the developmental assignment.[8] Without arguing any weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Defendant's non-retaliatory explanation, no reasonable factfinder could rationally find Defendant's explanation is pretextual. *Lobato*, 733 F.3d at 1289. Accordingly, this Court finds the evidence insufficient to raise a triable issue.

**Adverse Action 8.** Plaintiff claims Defendant retaliated against Plaintiff by changing his position description. Plaintiff also claims his job duties were taken away when he reported that his position description did not align with his job duties,

---

[8] Plaintiff listed the following: (1) Defendant assigned Plaintiff a new supervisor, Kloeppel, who was the same grade-level as Plaintiff; (2) Rowley admitted that in 2011, Plaintiff expressed an interest in working in a management role; (3) Rowley admitted that Plaintiff benefitted from and made good contributions to the meetings; (4) Rowley admitted the meetings helped develop Plaintiff's skills; (5) Plaintiff's job description stated he needed to attend the meetings to fulfill his job duties; (6) Rhoads and Kloeppel refused to provide Plaintiff with information discussed at Claims Executive meetings; (7) Plaintiff was never provided details to promote supervisory skills; and (8) Defendant excluded Plaintiff from discussing a lead project with the TSC Director even though Plaintiff was "better versed on the project than Mr. Rowley." Doc. 55 at 30.

leaving him with mostly clerical duties to perform. Under the pretext analysis, Defendant provided an explanation that dispels any notion that the description change was retaliatory. According to Defendant, SSA management mistakenly failed to update Plaintiff's position description during the realignment of the TSC in 2006. When Plaintiff complained of the discrepancy in October 2011, management reviewed Plaintiff's position description and concluded Plaintiff's job description "was not consistent with his job duties and had six elements under the rating factors instead of four." Doc. 52-10 at 2. To rectify the discrepancy, Defendant assigned Plaintiff to a new position with an updated position description, at the same pay and grade level.

After the update, Plaintiff complained "his supervisory role was taken away and he was given job duties that was [sic] only paperwork and not assignments that would provide him career growth." Doc. 55 at 31. His claim contradicts his own testimony, which indicated Plaintiff lost his supervisory duties back in 2005 (not in October 2011) and since then, he has been doing mostly paperwork: "I've been in a dead-end position for eight years, sir. I've been doing secretarial duties for eight years, sir." Doc. 52-2 at 3. Further, Plaintiff claims he was not given assignments that would provide career growth. This, again, is patently contradicted by Plaintiff's own statements. Specifically, Plaintiff claims the temporary detail, which required him to attend management meetings, helped get him back to a management role.

In an additional effort to demonstrate pretext, Plaintiff described the

deposition of the Director of Human Resources, Vickie Matthews: "Ms. Matthews admits in her deposition that HR did not take any official action to Plaintiff's complaint, nor did she speak to a supervisor." Doc. 55 at 31. Plaintiff also highlighted Matthews' testimony that "Plaintiff's nonstandard position description was taken away and a standard position was substituted when he was reassigned." Doc. 55 at 31. Neither of these assertions demonstrate Defendant's explanation was false, contrary to a written policy, or Plaintiff was treated differently than other similarly situated employees. *Salguero*, 366 F.3d at 1176. "[M]ere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *C.R. England, Inc.*, 644 F.3d at 1044.

Plaintiff makes one claim related to his position description that, if true, would indicate Plaintiff's non-retaliatory explanation was pretextual and unworthy of belief: "Mr. Rowley told Plaintiff that his job duties would depend on the outcome of Plaintiff's EEO mediation." Doc. 55 at 31. To support this allegation, Plaintiff cited generally to SDAF #31, which is nothing more than a recitation of the claims he submitted for investigation as noted in Defendant's Notice of Consolidation. Doc. 55 at 6–11; Doc 55-2 at 1–6. He also cited Exhibit F, which is Rowley's deposition. Doc. 55-1 at 21–25. Rowley did not address the alleged comment in his deposition. Rowley did, however, discuss Plaintiff's mediation. Rowley stated Defendant planned to allow Plaintiff to report directly to him as part of the mediation: "That's what we were going to offer in mediation. And then people who did the mediation

presented it, and I came into the mediation as well, and kind of informed [Plaintiff]."
Doc. 55-1 at 24. In this context, Rowley's testimony indicates Plaintiff's changed position description was potentially affected by the outcome of his mediation, but the alleged statement was not a threat. Rowley's testimony, instead, provides a legitimate, non-retaliatory explanation for Rowley's alleged statement—that changing Plaintiff's position description to report directly to Rowley was meant to satisfy Plaintiff's request for a new supervisor. Accordingly, Rowley's statement cannot be used to support Plaintiff's burden of demonstrating Defendant's explanation for changing Plaintiff's position description was pretext for retaliation because it makes Defendant's explanation more believable, not less.

**Adverse Action 9.** Plaintiff alleges he was denied the opportunity to serve as the Officer-in-Charge (OIC) when the Claim Manager was not present and instead appointed lower-level employees to act as the OIC. While the parties argue about whether Plaintiff established a prima facie case, the Court, again, advances its analysis to the parties' arguments regarding pretext. In response to Plaintiff's allegation, Defendant explained Plaintiff was not permitted to serve as Kloeppel's backup beginning in the fall of 2011 because SSA management changed its OIC policy when management determined it had enough supervisors to provide back-up when needed. Because Plaintiff was not a supervisor, after the policy change he could not serve as OIC. To refute Defendant's explanation and to establish pretext, Plaintiff advances three arguments.

First, he claims Defendant's explanation is contrary to an agreement he made with Kloeppel and Rhoads. While Plaintiff's alleged agreement with Kloeppel and Rhoads does contradict Defendant's updated OIC policy, such contradiction does not suggest Defendant's explanation about a decision made by superiors of Kloeppel and Rhoads in October 2011 is unworthy of belief because Kloeppel and Rhoads did not make the decision regarding the policy change. If anything, this assertion undercuts Plaintiff's retaliation claim because it indicates both Kloeppel and Rhoads were willing to allow Plaintiff to serve as OIC during the time that Plaintiff alleges he had a strained relationship with them. Accordingly, a reasonable factfinder could not rationally find the policy update explanation "unworthy of credence and hence infer that [Defendant] did not act for the asserted non-discriminatory reasons." *Lobato*, 733 F.3d at 1289.

Second, Plaintiff claims Rowley's testimony about his limited knowledge of the OIC system contradicts his later explanation about the OIC policy change. During his deposition, Rowley claimed he "[did not] know a lot of details on Officer in Charge. . . . [I]t wasn't in my unit." Doc. 55-1 at 23. Later, Rowley submitted an affidavit discussing the OIC policy change, which he explained, only allowed supervisors to act as an OIC. Doc. 52-10 at 3. To show pretext, Plaintiff asserts an inconsistency, but does not explain how Rowley's statement made his later explanation about the OIC policy change unworthy of belief. No reasonable factfinder could rationally find Rowley's statements would make Defendant's

26

explanation unworthy of credence. *Lobato*, 733 F.3d at 1289. Further, Rowley's statements do not create an inference that Defendant did not act for non-discriminatory reasons when it changed the OIC policy. *Id.*

Third, Plaintiff argues Defendant's claim that an OIC does not have supervisory duties contradicts "Ms. Rhoads [sic] statement that an OIC answers questions and handles things in the absence of the Section Manager." Doc. 55 at 32. This alleged contradiction does not advance Plaintiff's pretext argument. Whether an OIC is a supervisory position has no bearing on whether Defendant's policy change explanation is worthy of belief. The Court finds nothing in the record to indicate the policy change was implemented in retaliation for Plaintiff's EEO activities. Without more, Plaintiff's pretext arguments about the OIC position cannot withstand summary judgment. None of these alleged inconsistencies, alone or in combination, are sufficient to show pretext because a reasonable factfinder could not rationally find Defendant's explanations unworthy of credence and hence infer that Defendant did not act for the asserted non-discriminatory reasons. *Lobato*, 733 F.3d at 1289.

**Adverse Action 10.** Plaintiff asserts an email from his first-line supervisor, Sue Kloeppel, dated February 7, 2012 demonstrates Plaintiff was subjected to a hostile work environment in retaliation for his EEO filing. To meet step two of its *McDonnell Douglas* burden, Defendant provided a legitimate, non-retaliatory explanation. According to Kloeppel, she sent the email after Plaintiff discussed the

conduct of one bargaining unit employee with another bargaining unit employee. In the email, Kloeppel explained it was inappropriate for Plaintiff to engage in this kind of discussion, set forth her expectations, provided instructions, and asked if Plaintiff understood. Kloeppel denies the statement "While I hope this conduct situation does not result in disciplinary action, you are accountable for following my instructions" was a threat. Doc. 52-13 at 2.

First, Plaintiff contends Kloeppel's description is pretextual because it is inconsistent, but does not explain how or with what the statement is inconsistent. Second, Plaintiff claims Kloeppel's email "implied that Plaintiff was acting in an insubordinate manner." Doc. 55 at 34. After reviewing the email, the Court finds nothing to suggest such an implication. And even if there were, Plaintiff does not argue that such an implication would render Defendant's explanation unworthy of belief. *Lobato*, 733 F.3d at 1289. Third, Plaintiff contends Kloeppel's explanation was pretextual because "allegations that Plaintiff was acting outside the scope of his work is [sic] contradicted by Plaintiff's position description." Doc. 55 at 34. Kloeppel explained to Plaintiff, "It is not within the scope of your work assignments to give instructions to supervisors on how to deal with their employees." Doc. 52-13 at 6. Without evidence to refute Kloeppel's explanation, Plaintiff failed to show that Defendant's non-retaliatory reason for its actions were pretext for retaliation. Therefore, Plaintiff's claim cannot withstand summary judgment.

\* \* \*

Defendant Social Security Administration's motion for summary judgment (Doc. 52) is GRANTED. Plaintiff counsel's motion to withdraw (Doc. 62) is GRANTED. Final judgment in favor of Defendant shall be entered.

Entered for the Court
this 6th day of April, 2018


Bobby R. Baldock
United States Circuit Judge
Sitting by Designation